**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INN WORLDWIDE, INC.,<br><br>          Plaintiff,<br><br>v.<br><br>B.K.Y.K-II, INC., *et al.*,<br><br>          Defendants. | Civil Action No. 16-452 (JLL)<br><br>     **OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Plaintiff Days Inn Worldwide, Inc.'s Motion for Partial Summary Judgment, pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, on its claims for liquidated damages and recurring fees in connection with a licensing agreement and guaranty entered into by the parties. (ECF No. 38). Defendants B.K.Y.K-II, Inc., Bhupendra Bhakta, and Yasmin Sitaran opposed Plaintiff's Motion and filed a Cross-Motion for Partial Summary Judgment, pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, as to the same claims. (ECF No. 42). Plaintiff has filed opposition to Defendants' Cross-Motion and a reply to Defendants' opposition. (ECF No. 45). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court denies both Plaintiff's Motion and Defendants' Cross-Motion.

# I.  BACKGROUND[1]

## A.  Uncontested: The Licensing Agreement & Guaranty

On or about March 30, 2007, Plaintiff and Defendants entered into a licensing agreement ("the Licensing Agreement") whereby Defendants would operate a 36-room Days Inn lodging facility in Pasadena, California for a fifteen-year term. (ECF No. 38-3 ("Pl.'s SMF") ¶¶ 11, 13). Though there is a dispute as to whether Defendants read or understood the Licensing Agreement's terms, both parties admit that Defendants signed said agreement. (Pl.'s SMF ¶ 12; ECF No. 42-2 at 2). Pursuant to the Licensing Agreement, Defendants were required to periodically pay Plaintiff certain recurring fees, which included "royalties, system assessment fees, taxes, interest, reservation system user fees, and other fees." (Pl.'s SMF ¶ 14; *see also* ECF No. 38-5 at Ex. A ("Licensing Agreement") §§ 7, 18.1). For example, Defendants were required to make monthly royalty payments equaling 5% of the facility's gross room revenue, as well as pay "System Assessment Fees." (Licensing Agreement §§ 7.1.1, 7.1.2). Under the Licensing Agreement, interest on any overdue amount shall be paid to Plaintiff "at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (Licensing Agreement § 7.3).

---

[1] As an initial matter, the Court notes that Defendants have failed to file their response to Plaintiff's statement of material facts and their counter-statement of material facts as *separate* documents from their brief, which is required under Local Civil Rule 56.1(a). (*See generally* ECF No. 42-2). The Court will nevertheless accept Defendants' statements, and shall cite to Defendants' counter-statement of material facts listed on pages 9 through 16 in their brief as "Defs.' SMF" accompanied by the relevant paragraph number. As for Defendants' response to Plaintiff's statement of material facts, the Court shall cite to Defendants' brief and the relevant page number. The Court further notes that there are typographical errors in the paragraph numbering of Defs.' SMF starting with paragraph 14, which is incorrectly numbered as paragraph 11. The Court shall refer to each of these paragraphs by its proper number, not the number reflected in Defs.' SMF. Going forward, the parties are advised to check for such errors and consult the Local Civil Rules before making any submissions. The Court may disregard non-compliant filings in the future. *See United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 214 (3d Cir. 2000) ("Local court rules play a significant role in the district courts' efforts to manage themselves and their dockets . . . it is not an abuse of discretion for a district court to impose a harsh result, such as dismissing a motion or an appeal, when a litigant fails to strictly comply with the terms of a local rule") (citations omitted).

The Licensing Agreement also stated that Defendants must submit monthly reports disclosing the amount of gross room revenue for that month and maintain accurate financial information, books, and records. (Licensing Agreement §§ 3.8, 4.8). Plaintiff would be able to terminate the Licensing Agreement under various circumstances, including Defendants' (i) failure to pay an amount due, (ii) failure to remedy any default of their obligations within 30 days of receiving written notice, and (iii) "receipt of two or more notices of default" within a one year period regardless if said default is cured. (Pl.'s SMF ¶ 20; Licensing Agreement § 11.2). In the event that the Licensing Agreement was terminated, Defendants were required to pay liquidated damages in the amount of $1,000 per room that Defendants were authorized to operate at that time. (Licensing Agreement §§ 12.1, 18.4). The Licensing Agreement specifically stated that it was governed by New Jersey law and that the parties consented to the jurisdiction of courts in this District. (Licensing Agreement §§ 17.6.1, 17.6.3).

Though there is a dispute as to whether they understood its terms, Defendants executed a guaranty ("the Guaranty") when they entered into the Licensing Agreement. (Pl.'s SMF ¶¶ 26–28; ECF No. 42-2 at 5). The Guaranty specifically stated that, in the event of a default of the Licensing Agreement, Defendants shall "immediately make each payment and perform or cause [Defendants] to perform, each unpaid or unperformed obligation." (ECF No. 38-5 at Ex. B ("Guaranty")). The Guaranty also stated that Defendants shall pay the cost that Plaintiff incurred in enforcing its rights or remedies under same or the Licensing Agreement, including reasonable attorney's fees. (Pl.'s SMF ¶ 30; Guaranty).

### B. Plaintiff's Allegations: Defendants' Breach of the Licensing Agreement

According to Plaintiff, Defendants "repeatedly failed to meet [their] financial obligations" beginning in 2013, thereby breaching the Licensing Agreement. (Pl.'s SMF ¶ 31). Plaintiff claims

that it sent two letters in April and July of 2013, notifying Defendants that they owed over $200,000 in recurring fees and were in breach of the Licensing Agreement. (Pl.'s SMF ¶¶ 32–33). These letters supposedly informed Defendants that they had thirty days to cure the default and that failure to do so could result in the termination of the Licensing Agreement. (Pl.'s SMF ¶¶ 32–33). On September 17, 2013, Plaintiff terminated the Licensing Agreement due to Defendants' alleged failure to pay the recurring fees, and notified Defendants that they were required to pay Plaintiff liquidated damages and all recurring fees owed up until the termination. (Pl.'s SMF ¶ 34). Plaintiff alleges that Defendants have not made any payment of these outstanding amounts. (Pl.'s SMF ¶ 35).

Accordingly, Plaintiff brought this action against Defendants on January 27, 2016 seeking the outstanding recurring fees, liquated damages, actual damages, attorney's fees, and interest in the total amount of $402,674.15. (Pl.'s SMF ¶¶ 35–45; *see also* ECF No. 1 (reflecting when the Complaint was filed)). In its Complaint, Plaintiff alleges several counts pertaining to breaches of the various terms of the Licensing Agreement and Guaranty. (*See* ECF No. 1 ¶¶ 25–51).

## C. Defendants' Allegations: Plaintiff's Improper Audit of the Property

Defendants deny that they were in breach of the Licensing Agreement and claim that their supposed failure to meet financial obligations was based solely on an allegedly improper audit of the property. (Defs.' SMF ¶ 23; ECF No. 42-2 at 6). Specifically, Defendants claim that they were audited for a period of January 2010 through October 2012, and further claim that they fully complied with the auditor. (Defs.' SMF ¶¶ 2–3). After the audit, the auditor allegedly concluded that Defendants were underreporting the property's income, which was used to calculate the recurring fees. (Defs.' SMF ¶ 4). The auditor had allegedly calculated the new revenue amount based on the higher occupancy and room rates of three surrounding Days Inn properties, which

4

Defendants supposedly explained "were in superior locations [in Pasadena] and were high[er] end properties with amenities not offered by Defendants." (Defs.' SMF ¶¶ 4, 6–7). Defendants further claim that there was no evidence supporting the conclusion that these three properties were comparable, in part because they had substantially more rooms than Defendants' property, *i.e.*, 63, 56, and 75 rooms in comparison to Defendants' 36 rooms. (Defs.' SMF ¶¶ 22, 28).

According to Defendants, the auditor also drew several other improper assumptions in concluding that there was underreported income. For example, the auditor allegedly assumed that the property had full occupancy at all times of the week. (Defs.' SMF ¶ 10). Additionally, the auditor allegedly relied on improper techniques to add an additional amount of unreported income equaling over $50,000 per month for a period of 33 months. (Defs.' SMF ¶ 12). Defendants claim that there were several documents reflecting that they had accurately reported their income to Plaintiff, including the auditor's "Tax Test and OCC and Sales Tax Test," which did not find any variance in the amount of income Defendants reported. (Defs.' SMF ¶ 13). Defendants further claim that they explained to the auditor and Plaintiff that any large deposits were in fact added by Defendants in an attempt "to keep the failing hotel going." (Defs.' SMF ¶ 8). Defendants allegedly showed Plaintiff proof of these cash deposits to substantiate their position that the property was suffering financially. (Defs.' SMF ¶ 9).

Despite Defendants' alleged attempts to explain and discuss the matter, the auditor nevertheless submitted an audit reflecting that Defendants had underreported their income. (Defs.' SMF ¶ 14). Defendants claim that Plaintiff then billed Defendants around $181,000 based solely on the findings of the auditor, and demanded payment without further explanation to Defendants. (Defs.' SMF ¶ 15). Plaintiff then terminated the Licensing Agreement and brought the current action. (Defs.' SMF ¶ 13). Defendants allege that there is minimal documentary evidence

supporting the audit of the property, and that they were unable to depose anyone with substantial personal knowledge of the audit. (*See* Defs.' SMF ¶¶ 28–40). Defendants also allege that no documents or experts were provided to substantiate Plaintiff's claims of damages. (*See* Defs.' SMF ¶¶ 41–45).

## II.    LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-43 ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## III.    ANALYSIS

To state a claim for breach of contract under New Jersey law, a party must set forth allegations showing: (1) a contract existed between the parties; (2) a party breached the contract; (3) the breach resulted in damages; and (4) the party alleging the breach performed its obligations in accordance with the contract. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)

(citations omitted). In the absence of any ambiguity, the meaning of a contract can be interpreted as a matter of law. *J.I. Hass Co. v. Gilbane Bldg. Co.*, 881 F.2d 89, 92 (3d Cir. 1989) (citations omitted).

While neither party argues that the terms of the Licensing Agreement and Guaranty are ambiguous, there is nevertheless a genuine issue of material fact as to whether Defendants were in breach of same. The Court reaches this determination because the parties assert two completely different narratives regarding the alleged breach. On the one hand, Plaintiff argues that Defendants unequivocally breached the clear terms of the agreements by failing to make timely payments of the required recurring fees despite receiving due notice. (ECF No. 38-4 at 9, 14). It is undisputed that the Licensing Agreement required Defendants to make certain payments which equaled a percentage of their facility's gross room revenue. (*See* Licensing Agreement §§ 7.1.1, 7.1.2, 7.3). Defendants, on the other hand, argue that the alleged breach was based solely on an audit of Defendants' property, which concluded that Defendants underreported income after improperly over-assessing the property's value and the amount Defendants owed. (ECF No. 42 at 18–19). Defendants further argue that they explained to Plaintiff that they were not underreporting or in breach. (ECF No. 42 at 18). Both arguments are supported by evidence in the record, such as Defendants' admission that they have not paid Plaintiff since the termination and communications indicating that Defendants provided Plaintiff with proof of personal funds they deposited into the property. (*See* ECF No. 38-6 at Ex. A ¶ 8; ECF No. 42-3 at Exs. B, L).

Plaintiff argues that Defendants waived their ability to rely on the allegedly improper audit as an excuse for their non-payments, because they continued operating under the terms of the Licensing Agreement after the audit. (ECF No. 45 at 5, 8–10). Plaintiff bases this argument on a Third Circuit case which states:

> Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages. Under no circumstances may the non-breaching party stop performance *and* continue to take advantage of the contract's benefits.

*S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 376 (3d Cir. 1992) (applying contract principles to the appeal of a franchisor's motion for preliminary injunctive relief in a Lanham Act case).

The Court is not persuaded to find as a matter of law that Defendants were taking advantage of the Licensing Agreement. In the case cited by Plaintiff, a *terminated* franchisee retained the benefits it was granted under an agreement and argued that its conduct was excused because the franchisor previously breached said agreement. *See id.* Here, Defendants appear to have acted under the Licensing Agreement only while it was in effect, and allegedly communicated with Plaintiff in an attempt to explain and resolve the supposed breach pre-termination. (*See, e.g.,* Defs.' SMF ¶¶ 9, 13; ECF No. 42-2 at 6). Unlike the franchisee in *S & R Corp.*, 968 F.2d at 377, Defendants are not arguing that their failure to pay is excused based on some breach committed by Plaintiff, but rather are arguing that there was no breach in the first place because any allegation of same was based on an improper audit. (ECF No. 42-2 at 18–19). Such an argument is better left to the fact finder. *See Magnet Resources, Inc. v. Summit MRI, Inc.*, 318 N.J. Super. 275, 286 (App. Div. 1998) ("Whether conduct constitutes a breach of contract and, if it does, whether the breach is material are ordinarily jury questions.") (citations omitted).[2]

Furthermore, even if the Court agreed with Plaintiff and found that Defendants were attempting to excuse their supposed failure to pay, the disputed issues pertaining to the audit and

---

[2] It should be noted that a finding for Defendants would be equally inappropriate as a finding for Plaintiff, in part based on Plaintiff's arguments that there were no miscalculations in the audit and, if one occurred, it was caused by Defendants' failure to comply with the auditor. (ECF No. 45 at 11–12).

Defendants' alleged underreporting of income would nevertheless prevent the Court from determining damages at this time. *See, e.g., S & R Corp.*, 968 F.2d at 377 ("pre-termination disputes affect the issue of damages"); *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 448 (D.N.J. 2012) ("as genuine issues of material fact exist as to the amount of royalties due, the court will not award a specific amount of damages at this time."). Because both parties raise plausible but contradictory arguments supported by facts in the record, and because these arguments directly impact the issue of whether or not Defendants breached the Licensing Agreement and the amount of damages in this case, the Court concludes that there are genuine issues of material fact which prevent a finding of summary judgment for either Plaintiff or Defendants.

## IV.    CONCLUSION

For the aforementioned reasons, the Court hereby denies Plaintiff's Motion for Partial Summary Judgment and Defendants' Cross-Motion for Partial Summary Judgment. An appropriate Order follows this Opinion.

Dated: November 14, 2018.

JOSE L. LINARES
Chief Judge, United States District Court